Ruffin, Chief Justice.
 

 The subject of this controversy is, the remainder or reversion in the slaves lent by the testator to his wife for life. The cause has not been argued; and from the pleadings, it appears to be the opinion of all parties that the will disposes of the remainder in the slaves to the testator’s children, as a contingent interest. The question made is, whether the remainder vested in those who were living in 1808, that is to say, all the children; or only in those three who survived the wife ?
 

 If we thought that the last clause in the will operated on this remainder, yet we should be of opinion that the legacies became vested in 1808. In the previous parts of the will, the testator lends to his wife his manor plantation, these slaves,.and other things; and gives to each of his children specific legacies of slaves and other articles. He then directs “ all the negroes which he had given away or lent,” and also “ all those which he had not given away,” to be kept on his lands, and worked upon certain specified terms;-and he adds, “ as my children shall come to the age of 21 years or marry, it is my desire that they shall have the legacies already given away.” Thus far the negroes, not specifically bequeathed, remain, to be the subjects of a residuary clause, or to be left undisposed of. Then comes the last clause as follows: “ It is my will that my wife and children shall ..have
 
 *64
 
 the use of my plantation, lying on Roanoke, until the year and if my wife should die before that time, it is my desire that an equal division of all my estate that is not given away, should take place among my children, then living at my wife’s death, or the time above stated, that is, land, negroes,” &c. There are two questions upon this part of the will. The one, what part of the' property is disposed of therein? The other, to what persons is it given? Upon the second, we think it plain that the gift is to those children who might be living at the' period of division; and that period is the year 1808, or the death of the wife, whichever should the sooner happen. As the family was to have the use of the land, as a joint fund, until 1808, and no longer, the division cannot be postponed beyond that year. If must take place then, at all events. Then, the other parts of the clause must be taken as providing for an earlier división in á certain event. The testator had nó object in keeping his estate together after the death of his wife — therefore he declares, that if he should die !£ before that time,” that is, the year 1808, there shall be an equal division among the children then living at his wife’s death. If he had stopped there,- the construction would, seem to be unavoidable, that the wife’s death, here meant, was that mentioned just before,- namely, her death
 
 before
 
 1808,- and not at any indefinite period. But the testator goe's on to. remove every doubt that might be raised on the phraseology,- ££ then living at my'wife’s death,” if it stood alone, by adding “ or the time above stated,” that is to say, the same year' 1808.
 
 “
 
 Then' living,”' therefore, refers to the one or the other of those periods; and, of course, to that which should arrive first. Consequently, all the children would take, as none died until 1817.
 

 But to us, it appears; that in the event that has happened, the will does not operate at all on these negroes, except as they are charged with making good the slave bequeathed: to one of the children, which died. We have just said, that the division specified in this clause, is one which must be made in 1808, at the latest. Therefore, no property is within the purview of' this part of the will, but such as the testator meant should
 
 then
 
 be divided- among his Children at all
 
 *65
 
 events. Now, we think it indubitable, that he did not mean the negroes which he had lent to his wife for life, should then be divided, if she were still living. The wife was not to be left destitute, after 1808; for the loan is for her life, however long that may be. Hence his language is, if his wife should die
 
 before that
 
 time, 1808- — then “
 
 all his
 
 estate, not given away, should be divided among his children.” But, if she should not die until after 1808. — which has turned out to be the fact — then the will is silent as to the reversion of the negroes bequeathed to her; and consequently, there is an intestacy as to them. As a surplus undisposed of, it vested in the executor, in trust for the next of kin, upon the death of the testator; subject, however, in case the wife had died before 1808, to be divested, and divided, under the will, among the children then living.
 

 As to the question between Mrs. Higgs "and-the administrator of her late husband, there is no doubt. Being in the nature of a distributive share, not received by the husband, but remaining
 
 a chose in action
 
 at his death, this interest survives to the wife.
 
 Carr
 
 v. Taylor, 10 Ves. 578.
 

 Per Curiam. Decree accordingly.